HEATHER S. WHITE (7674)
SCOTT YOUNG (10695)
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Ogden City
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah  84145
Telephone:  (801) 521-9000
Fax No.:  (801) 363-0400

*Attorneys for Ogden City*

IN THE UNITED STATES DISTRICT COURT

STATE OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DANIEL JOSEPH LUCERO,<br><br>    Plaintiff,<br><br>vs.<br><br>WEBER COUNTY, OGDEN CITY, CHRISTOPHER ALLRED, in his official capacity, and & DOES 1-10,<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF OGDEN CITY'S MOTION TO DISMISS WITH PREJUDICE**<br><br>**[ORAL ARGUMENT REQUESTED]**<br><br>Civil No. 1:15CV133<br><br>Judge David Nuffer |

## INTRODUCTION

Mr. Lucero seeks a declaratory judgment that a gang injunction the Utah Supreme Court declared void in October of 2014 violates due process and the First Amendment.  His complaint should be dismissed because he does not have standing to pursue a declaratory judgment on a dead injunction.  Although Mr. Lucero contends an October 2015 news article citing the Weber County Attorney's desire to enact a similar injunction conveys standing, no such action has occurred and the Weber County Attorney's quote indicates any new injunction may be different

than the voided injunction.  "A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it."  *St. Pierre v. U.S.*, 319 U.S. 41, 42 (1943).  "A declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'"  *Nat'l Advertising Co. v. City and Co. of Denver*, 912 F.2d 405 (10th Cir. 1990).  Thus, Mr. Lucero's complaint should be dismissed.

Mr. Lucero's complaint should also be dismissed because it was filed after the statute of limitations ran.  Mr. Lucero argues that he did not know of his claims until the Utah Supreme Court's ruling that the injunction was void.  However, this ruling did not concern the constitutionality of the injunction and, therefore, could not have provided notice that it violated the Constitution.  The statute of limitations runs from when Mr. Lucero knew or should have known of the claims.  *See Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).  Because he knew or should have known of his claims when he was served with the injunction in September or October of 2010, his complaint is time-barred.

Even if Mr. Lucero had standing and had filed within the statute of limitations, his complaint fails to state a claim against Ogden.  It alleges only that Ogden prosecuted him under the then-valid injunction, and does not allege that this prosecution arose from a policy or custom of using unconstitutional injunctions as a basis for prosecution.  His state law claims fail for the same reasons.  Therefore, his complaint against Ogden should be dismissed with prejudice.

**ARGUMENT**

**I.   MR. LUCERO DOES NOT HAVE STANDING TO CHALLENGE AN INJUNCTION THAT WAS DECLARED VOID IN 2014.**

Ogden argued in its opening brief that Mr. Lucero lacked standing to pursue a declaratory judgment that the injunction is unconstitutional because it was ruled void in October of 2014 and has not been reinstated. Mr. Lucero argues he has standing because the injunction may be reinstated. However, "[E]ven when a legislative body has the power to reenact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010). "A statutory change … is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. As a general rule, if a challenged law is repealed or expires, the case becomes moot." 13C Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3533.6 (3d. ed. 2008). "And the 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010).

Mr. Lucero argues he has standing because it is likely the injunction will be reinstated. This argument is based entirely on an October 20, 2015 article in the Ogden Standard Examiner. Eighteen months have passed since the injunction was voided and five months have passed since the article was published, and the injunction has not been reinstated. One newspaper article followed by five months of inaction does not show that any action on the injunction is probable, likely, or imminent. In addition, the article states that a new injunction may be different from the

one that was voided by the Utah Supreme Court.  In the article, Weber County Attorney Chris Allred is quoted as saying, "It [the injunction] will essentially be the same - we might tweak it a little bit, add some provisions or take some provisions out." (Dismiss Opposition, Docket 26-1, p. 4.)  Federal courts have long shunned rendering advisory judgments on a set of facts that may or may not arise.  *See St. Pierre v. U.S.*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it."); *see also Nat'l Advertising Co. v. City and Co. of Denver*, 912 F.2d 405 (10th Cir. 1990) ("A declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'").  Dismissal will preserve judicial resources and it will not harm Mr. Lucero because he will have standing to pursue his claims if another injunction is obtained and he believes it violates his constitutional rights.

    **II.    EVEN IF MR. LUCERO HAD STANDING, THE STATUTE OF LIMITATIONS ON HIS CLAIMS HAS RUN.**

It is undisputed that the statute of limitations for § 1983 actions is four years.  *See Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).  "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citations omitted).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Id.* (citations omitted).   Mr. Lucero alleges in his complaint that he was served with the injunction in September or October of 2010.  (Complaint, Docket 2, Par. 65.)  He "knew or should have

4

known" at that time whether it violated his rights, yet he filed his complaint on October 16, 2015, after the 4-year statute of limitations period had expired. Mr. Lucero advances three arguments that the statute of limitations has not run, and all fail.

### A. Mr. Lucero's constitutional claims did not accrue in November 2013, when the time for rehearing on the Utah Supreme Court's ruling passed.

Mr. Lucero argues:

> It was not until November 2013 that the Utah Supreme Court remitted to the district court the ruling in *Weber County* declaring the injunction void. Before that time, there was a distinct lack of clarity as to whether the injunction would continue to be upheld in state court, a key fact in a suit questioning the propriety of the injunction. Accordingly, the earliest time that the statute of limitations began to accrue on any claim was in November 2013, when the time to request a rehearing on the October decision had passed and the *Weber County* decision was remitted to the district court.

(Dismiss Opposition, Docket 26, pgs. 8-9.) However, the Utah Supreme Court's ruling could not have provided Mr. Lucero with his first notice that the injunction may violate the Constitution because it did not address this issue. Mr. Lucero admits this, noting that "[t]he *Weber County* court limited its reasoning to faulty service on the Ogden Trece at the initiation of the case, and did not reach the questions of substantive or procedural due process." (Dismiss Opposition, Docket 26, pg. 3.)

A court ruling does not trigger the statute of limitations. Rather, the statute of limitations begins to run when a plaintiff knew or should have known of a claim. The Tenth Circuit has repeatedly held that "a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004) (citations omitted). "Rather, we focus on whether the plaintiff knew of *facts* that would put a reasonable person on notice that wrongful conduct caused the harm" *Id.* (emphasis

5

added, citations omitted).  "In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.* (citations omitted).

Mr. Lucero knew of the facts that form the basis of his claim that the injunction violated due process and the First Amendment when he was served with the injunction in September or October of 2010.  The Utah Supreme Court's ruling did not change this.  Because Mr. Lucero did not file the present case within four years of this time, his complaint is barred.

### B.     The "Continuing Violations Doctrine" does not apply here.

In *Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1994), the appellant asserted this doctrine, which the Tenth Circuit described as "an equitable principle that we have applied in the context of Title VII claims." *Id.* at 1266.  "The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Id.* (citations omitted).  The Tenth Circuit considered three nonexclusive factors in determining whether to apply this doctrine in *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410 (10th Cir. 1993), "(i) subject matter - whether the violations constitute the same type of discrimination; (ii) frequency, and (iii) permanence - whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* at 1415.  "The continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Id.*, n. 6.

6

The Tenth Circuit has not held that this doctrine applies outside of Title VII. Even if it did, it would not save Mr. Lucero because a reasonable person would have been aware in September or October of 2010 of a claim that the injunction served upon him violated due process and the First Amendment. Mr. Lucero contends that the continuing violations doctrine applies because Ogden has kept his name in a gang database. This, however, has nothing to do with when Mr. Lucero should have known of a violation. Moreover, Mr. Lucero has not sought relief for being in a gang database. Rather, he seeks only a declaratory judgment that the injunction violates due process and the First Amendment. Thus, the Continuing Violations Doctrine does not apply here.

### C. *Mr. Lucero has not alleged any facts that would support an ongoing violation by Ogden.*

Mr. Lucero's final argument is that Ogden is engaged in a pattern of conduct that continues to violate Mr. Lucero's rights to this day. This argument is without merit. The injunction at issue was voided on October 18, 2014. Mr. Lucero's conviction was vacated on June 5, 2015, more than 9 months ago. No charges related to the injunction are currently pending against Mr. Lucero. Thus, despite Mr. Lucero's speculation about what could happen in the future (Ogden could reenact the injunction and charge him again), he has no basis to argue his rights are currently being violated. Mr. Lucero again argues that the fact his name is in a gang database amounts to an ongoing violation sufficient to allow him to proceed with his claims for declaratory relief on the dead injunction. As set forth above, the gang database and the constitutionality of the injunction are separate issues. Mr. Lucero has not sought relief for being in a gang database. Rather, he seeks only a declaratory judgment that the injunction violates due

7

process and the First Amendment.Thus, his allegations regarding the database cannot toll the statute of limitations.

### III. MR. LUCERO HAS NOT ALLEGED ACTIONS BY OGDEN THAT VIOLATED THE CONSTITUTION OR THAT THE VIOLATION WAS CAUSED BY AN OGDEN CUSTOM OR POLICY.

#### A. *Mr. Lucero has not alleged facts amounting to a violation of the Constitution.*

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citations omitted). Mr. Lucero argues that he has alleged sufficient facts to state plausible claims against Ogden, but this is incorrect. As Ogden noted in its opening brief, Mr. Lucero alleges:

- "On August 20, 2010, Weber filed a complaint for permanent injunction to abate a public nuisance against the Ogden Trece gang;" (Complaint, Docket 2, Par. 18)

- "On August 24, 2010, Weber personally served the nuisance suit on five alleged Trece members;" (Complaint, Docket 2, Par. 20)

- "On June 11, 12, and 14, 2012, the district court held an evidentiary hearing in the nuisance suit to consider whether to make the preliminary injunction permanent;" (Complaint, Docket 2, Par. 50)

- "At the conclusion of the hearing, the district court entered a permanent injunction that was substantially identical to the preliminary injunction;" (Complaint, Docket 2, Par. 52)

- "In or around September or October of 2010, members of the Weber or Ogden gang unit served Mr. Lucero with the preliminary injunction from the nuisance suit;" (Complaint, Docket 2, Par. 67)

- "On October 10, 2012, Weber charged Mr. Lucero with violating Utah Code section 76-10-807, violation of an order enjoining a public nuisance, a Class B misdemeanor …" (Complaint, Docket 2, Par. 70)

8

- "On July 16, 2012, Mr. Lucero was convicted of the charge of violating the preliminary injunction and one other charge." (Complaint, Docket 2, Par. 72).

Mr. Lucero argues that Ogden disregards various allegations directly implicating it, such as Paragraphs 1, 4, 7, 46-46, and 67. (Dismiss Opposition, Docket 26, pg. 11 and 12.) However, these paragraphs contain characterizations and legal conclusions, not factual allegations. For example, Paragraph 1 merely summarizes Mr. Lucero's view of the case:

> This case is about an overzealous use of government power by county and city government and its officials, and Plaintiff Daniel Joseph Lucero brings the suit to remind officials that the ends do not always justify the means.

(Complaint, Docket 2.) This characterization contains no factual allegations and cannot sustain a complaint. Mr. Lucero argues that the allegation in Paragraph 4 that "Defendants secured and enforce a "gang injunction"" inculpates Ogden. (Complaint, Docket 2.) However, this paragraph is undermined by the specific allegation that Weber, not Ogden, secured the injunction. (*See* Complaint, Par. 18, 20, 50, and 52). The Tenth Circuit has held that "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The specific facts must also give rise to claims against the proper defendant. Mr. Lucero has alleged only that "members of Weber or Ogden gang unit" served the then-valid injunction on him in September or October of 2010. (Complaint, Docket 2.) Mr. Lucero specifically pleads that Weber obtained the injunction and Weber prosecuted him for violating it. (Complaint, Docket 2.) These facts do not support a claim for a constitutional violation against Ogden. This is more apparent when considering Mr. Lucero's specific claims for relief. Mr. Lucero seeks declaratory relief for violation of

procedural due process, substantive due process, and violation of the rights to free expression and association under the First Amendment.

"The Supreme Court has consistently held that due process requires notice and a meaningful opportunity to be heard." *In re C.W. Mining Co.*, 625 F.3d 1240, (10th Cir. 2010) (citations omitted). Mr. Lucero received ample process in his criminal prosecution, where he was represented by counsel and chose to plead guilty rather than contest the constitutionality of the injunction. The injunction was litigated in Second District Court where it was upheld, and later voided by the Utah Supreme Court. This more than satisfied due process.

Mr. Lucero has also failed to plead a claim under substantive due process. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007) (citations omitted). Mr. Lucero's claim does not involve any of these areas. Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). This leads to Mr. Lucero's First Amendment claims.

There is no generalized right of free association under the First Amendment. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989). Rather, the protection of association is limited to situations involving intimate relationships or furthering another right, such as free speech. *See Id.* Mr. Lucero has not explained how serving him with a then-valid injunction violated his First Amendment right to speech.

And while Mr. Lucero takes issue with Ogden's citation to *U.S. v. Johnson*, 408 F.3d 1313, 1320 (10th Cir. 2005) because it involved a search warrant rather than an injunction, it is analogous to this situation because the officers relied on a statute that was later repealed. In that case, the Tenth Circuit held that "the search is in good faith if the officer 'relied, in objective good faith, on a statute that appeared legitimately to allow a warrantless administrative search of [defendant's business].'" *Id.* The same analysis applies here. Ogden was entitled to serve Mr. Lucero with the then-valid injunction that a district court judge had entered. This did not violate due process or the First Amendment.

### B. Mr. Lucero has not alleged an Ogden policy or custom causing any violation.

Mr. Lucero acknowledges that he must allege sufficient facts that Ogden executed a policy or custom that caused the constitutional violation. However, he does not use the words "policy" and "custom" in his complaint. Despite this, Mr. Lucero argues that Paragraphs 1, 4, 7, 26-35, 36-38, 40-42, 45-46, 53, 59-64, and 65 alleged a policy/custom that caused the violations he has asserted. As set forth above, Paragraph 1 contains no factual allegations and merely summarizes Mr. Lucero's view of the case and motivation for filing it. (Complaint, Docket 2.) Paragraph 4 asserts that 'Defendants secured and enforced a "gang injunction."' (Complaint, Docket 2.) Paragraph 7 merely asserts that "these civil rights violations were particularly egregious" because Defendants served him with the injunction even though they knew he had left Trece. (Complaint, Docket 2.) Paragraphs 26-35 describe the injunction. (Complaint, Docket 2.) Paragraphs 36-38 and 40-42 describe the injunction's opt-out provision. (Complaint, Docket 2.) Paragraphs 45-46 allege a lack of pre-deprivation process and that Weber and Ogden

11

served the injunction on 300 individuals. (Complaint, Docket 2.) Paragraph 53 alleges that Weber and its agents arrested people for violating the preliminary injunction after the district court made it permanent. (Complaint, Docket 2.) Paragraphs 59-64 allege that Mr. Lucero left Trece and informed members of Ogden's police force of this. (Complaint, Docket 2.) Paragraph 65 alleges that Weber of Ogden gang unit members served Mr. Lucero with the injunction. (Complaint, Docket 2.) Nowhere in these paragraphs does Mr. Lucero allege Ogden had any policy or custom, let alone a policy or custom of serving unconstitutional injunctions, and that this policy or custom caused a violation of due process or the First Amendment. This is not sufficient to sustain Mr. Lucero's claims against Ogden. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphasis in original). Therefore, the claims against Ogden should be dismissed.

### IV. MR. LUCERO'S STATE-LAW CLAIMS ALSO FAIL.

Mr. Lucero argues that he satisfies the *Spackman* factors and, therefore, his state-law claims should be allowed to go forward. This argument is without merit, as illustrated by his attempt to satisfy the *Spackman* requirement that he had no other remedies to protect his rights. Mr. Lucero argues that "Ogden hyposthesizes that Mr. Lucero could have effectively protected his rights in 2010 if he had 'filed a lawsuit.' Ogden does not explain what kind of lawsuit it imagines Mr. Lucero could have filed." (Dismiss Opposition, Docket 26, pg. 16). This is incorrect. Mr. Lucero could have asserted that the injunction violated due process and the First Amendment in his criminal trial. He also could have raised these arguments in a state law malicious prosecution claim after his conviction was vacated. These are just two examples of

remedies Mr. Lucero chose not to pursue. Mr. Lucero's state law claims are also barred by Mr. Lucero's lack of standing and his failure to file suit within the applicable statute of limitations (which is also four years). Therefore, Mr. Lucero's state law claims against Ogden should also be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should grant Ogden's motion to dismiss with prejudice.

DATED this 24th day of March, 2016.

SNOW, CHRISTENSEN & MARTINEAU

_____
Heather S. White
Scott Young
Attorneys for Ogden City

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and served a true and correct copy, ***via Email and U.S. Mail, postage prepaid,*** on the following:

>John Mejia
>Leah Farrell
>ACLU of Utah Foundation, Inc.
>355 N. 300 W.
>Salt Lake City, Utah 84013
>aclu@acluutah.org
>
>Randall Richards
>Richards & Brown
>938 University Park Blvd, Suite 140
>Clearfield, Utah 84105
>Randy@richardsbrownlaw.com
>
>*Attorney for Plaintiffs*
>
>Frank D. Mylar
>MYLAR LAW, P.C.
>2494 Bengal Blvd.
>Salt Lake City, Utah 84121
>Mylar-Law@comcast.net
>
>*Attorneys for Weber County Defendants*

*/s/ Annette Gamero*